UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| CASSANDRA MAWYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC UNION BANK,<br><br>Defendant. | Case No.  3:21-cv-726<br><br>**JURY DEMAND** |

## CLASS ACTION PETITION

Plaintiff Cassandra Mawyer ("Plaintiff"), individually and on behalf of the class of persons preliminarily defined below (the "Class"), makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE OF THE ACTION

1. Plaintiff brings this action individually and on behalf of a class of all similarly situated consumers against Defendant Atlantic Union Bank ("Atlantic Union" or "Defendant"), arising from its routine practices of assessing multiple $38 fees on an item.

2. Defendant misleadingly and deceptively misrepresents its fee practices, including in its own contract, which consists of the Terms and Conditions of Your Account document, attached as **Exhibit A** hereto (the "Agreement"); and the Personal Deposit Accounts Fee Schedule, attached as **Exhibit B** hereto (the "Fee Schedule") (collectively, the "Contract").

3. This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief.

1

4. As described herein, Defendant's practices violate Virginia common law, as well as the Defendant's own form contracts.

5. Defendant's improper scheme to extract funds from account holders has victimized Plaintiff and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

## PARTIES

6. Plaintiff Cassandra A. Mawyer is a natural person and a citizen and resident of Staunton, Augusta County, Virginia. Plaintiff has had a checking account with Defendant at all times material hereto.

7. Defendant Atlantic Union is a bank with nearly $20 billion in assets. Atlantic Union is one of the largest banks based in Virginia. Atlantic Union is headquartered in Richmond, Virginia and maintains branch locations across Virginia, Maryland and North Carolina.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative Class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed Class that is comprised of over one hundred members, and because at least one of the members of the proposed Class is a citizen of a different state than Atlantic Union.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Atlantic Union resides in this District. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because Atlantic Union maintains its headquarters in this District and so a substantial part of the events or omissions giving rise to Plaintiff's claim occurred and continue to occur in this District.

## BACKGROUND FACTS

**I. PLAINTIFF NEVER AGREED TO BE ASSESSED MULTIPLE FEES ON AN ITEM.**

    **A. Defendant Improperly Charges Two Or More Fees on an Item**

10. Overdraft fees and non-sufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $29.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, Moebs (Mar. 27, 2019), https://bit.ly/3cbHNKV.

11. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices*, Pew Charitable Trusts 6 (June 2014), https://bit.ly/3ksKD0I.

12. Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

13. Unbeknownst to consumers, each time Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

14. The FDIC has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

15. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one NSF fee even if an item is reprocessed for payment multiple times.

16. The Contract allows Defendant to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $38 overdraft fee; or (b) reject the item and charge a $38 NSF fee.

17. In contrast to the Contract, however, Defendant regularly assesses two or more $38 fees on an item.

### B. The Imposition of Multiple Fees on an Item Violates Defendant's Express Promises and Representations

18. The Agreement states:

> If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (resulting in a NSF). Overdraft, NSF, and other fees are disclosed in the Personal Deposit and Business Deposit Fee Schedules.

Ex. A at 7.

19. The Fee Schedule promises that fees will be assessed "per item":

> Non-Sufficient Funds[2] (Per Item) ............................................$38.00
> Overdraft[2] (Per Item)..............................................................$38.00
> . . .
>
> [2] Atlantic Union Bank limits the total number of combined Overdraft and Non-Sufficient Funds fees to 6 per business day

Ex. B at 3.

20. These promises reasonably mean that an item will be assessed, at most, a single overdraft fee if it is paid into overdraft or a single NSF Fee if the item is returned unpaid.

21. In breach of these promises, however, Defendant assesses multiple NSF fees per item or an NSF fee *and* an overdraft fee on an item.

22. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

23. There is zero indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.

24. Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

25. Defendant and its customers never agreed that Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

26. In sum, Defendant promised that one fee would be assessed per "item," and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

27. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

28. Taken together, the representations identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree

that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

29. Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

30. Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it.

31. First Citizens Bank, a major institution in the Carolinas, engages in the same practice as Defendant, but expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Oct. 2020), https://bit.ly/2GJjSqq (emphasis added).

32. Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

33. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) an item is submitted to us for payment from your Account when, at the time of posting, your Account is overdrawn or would be overdrawn if we paid the item (whether or not we in fact pay it); or (2) we return, reverse, or decline to pay an item for any other reason authorized by the Terms and Conditions of your account. For these purposes, an item includes a check, an ATM or debit card transaction, an ACH transaction, or other withdrawal, transfer or debit. Your account is overdrawn if your Available Balance is less than zero. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

*Online Access Agreement*, Klein Bank 17 (Jan. 2013), https://bit.ly/2Fevj8W (emphasis added).

34. Plaintiff and Atlantic Union made no such agreement, and the Contract actually promises the opposite—Atlantic Union may charge, at most, a fee per item.

**C. Plaintiff's Experience**

35. In support of Plaintiff's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

36. For example, in October 2021 alone, Plaintiff was charged $1,216.00 in NSF Fees. While Atlantic Union's statements do not identify the specific transactions that caused the fees, upon information and belief, many of these NSF Fees were charged on items that had previously been returned unpaid and charged an NSF Fee.

37. Upon information and belief, these retry items were reprocessed and returned without Plaintiff's knowledge and without her request to Defendant to reprocess the items.

38. Nevertheless, Defendant charged Plaintiff a $38 fee each time a retry item was reprocessed and returned again for insufficient funds.

39. Plaintiff understood each of her payments to be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

40. The improper fees charged by Defendant were also not errors, but rather intentional charges made by Defendant as part of its standard processing of items.

41. Plaintiff therefore had no duty to report the fees as errors.

42. Moreover, any such reporting would have been futile as Defendant had decided to charge the fees in this specific manner to maximize profits at the expense of customers.

## II. THE IMPOSITION OF THESE FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

43. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Defendant is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant has a duty to honor payment requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees on an item.

44. When Defendant charges improper fees, it uses its discretion to interpret its adhesion contract in a way that violates common sense and reasonable consumer expectations.

Defendant uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

45. In addition, Defendant abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Defendant's duty to engage in fair dealing and to act in good faith.

46. It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess fee in this manner.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action on behalf of herself and the following class of persons pursuant to Federal Rule of Civil Procedure 23:

> All persons who, during the applicable statute of limitations, were assessed multiple fees on an item on an Atlantic Union Bank checking account.

48. Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

49. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

50. The members of the proposed Class are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class are unknown at this time and can be ascertained only through appropriate discovery. Plaintiff estimates the number of members in the Class to be in the thousands.

51. There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

    a. Whether Defendant charged multiple fees on an item;

    b. Whether this practice breaches the Contract;

    c. Whether Defendant breached the covenant of good faith and fair dealing;

    d. The proper method or methods by which to measure damages; and

    e. The declaratory and injunctive relief to which the Class is entitled.

52. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's actions.

53. Plaintiff will fairly and adequately represent and protect the interests of the Class. There is no hostility of interest between Plaintiff and the unnamed Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

54. Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows for unitary adjudication, judicial economy, and

the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

55. Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

56. Defendant, as the party opposing the Class, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

## FIRST CLAIM FOR RELIEF
**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff incorporates by reference the preceding paragraphs.

58. Plaintiff and Defendant have contracted for banking services, as embodied in Defendant's account documents.

59. All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

60. Defendant has breached the express terms of its own agreements as described herein.

61. Under Virginia law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

62. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

63. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

64. Defendant abused the discretion it granted to itself and acted arbitrarily when it charged multiple fees on an item.

65. In these and other ways, Defendant violated its duty of good faith and fair dealing.

66. Defendant willfully engaged in the foregoing conduct for the purposes of (1) gaining unwarranted contractual and legal advantages; and (2) maximizing fee revenue from Plaintiff and other members of the Class.

67. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

68. Plaintiff and members of the Class have sustained damages as a result of Defendant's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a. Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b. Award Plaintiff and the Class actual damages in amount according to proof;

c. Award Plaintiff and the Class restitution in an amount to be proven at trial;

d. Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;

e. Award Plaintiff and the Class attorneys' fees and costs as permitted by law;

f. Declare Defendant's practices outlined herein to be unlawful to the extent they are inconsistent with the Contract;

g. Enjoin Defendant from engaging in the practices outlined herein to the extent they are inconsistent with the Contract;

h. Grant Plaintiff and the Class a trial by jury;

i. Grant leave to amend these pleadings to conform to evidence produced at trial; and

j. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: November 18, 2021   By:   s/Devon J. Munro
Devon J. Munro (VSB #47833)
MUNRO LAW PC
P. O. Box 7205
Roanoke, VA 24019
Ph:     (877) 652-6770
Fax:    (540) 328-9290
dmunro@trialsva.com

13

Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ltoops@cohenmalad.com

J. Gerard Stranch, IV*
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com

Taras Kick*
THE KICK LAW FIRM
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Taras@kicklawfirm.com

*Attorneys for Plaintiff and the Putative Class*

* to seek admission *pro hac vice*