IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CASSANDRA MAWYER, *individually and*
*on behalf of all others similarly situated*
     Plaintiff,

    v.                                       Civil No. 3:21cv726 (DJN)

ATLANTIC UNION BANK,
     Defendant.

**MEMORANDUM OPINION**
**(Granting in Part and Denying in Part Motion to Dismiss)**

Plaintiff Cassandra Mawyer ("Plaintiff") brings this class action on behalf of herself and all individuals similarly situated against Defendant Atlantic Union Bank ("Defendant"). Plaintiff's suit stems from a contract dispute regarding Defendant's fee practices for overdrafts. Plaintiff alleges that Defendant violates the terms of its agreement with accountholders by charging multiple fees for multiple attempts to process a single payment instruction. This matter now comes before the Court on Defendant's Motion to Dismiss Plaintiff's Class Action Petition (ECF No. 6). For the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion.[1]

---

[1]     Defendant has requested oral argument on the instant Motion, because of the parties' contradictory readings of the contract at issue. (Notice of Request for Hrg. (ECF No. 18).) The Court hereby DENIES Defendant's request and dispenses with oral argument, because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

## I.   BACKGROUND

At this stage of the proceedings, the Court must accept as true the facts set forth in the Petition.  Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   Factual Background

Defendant is one of the largest banks based in Virginia, with locations spanning Virginia, Maryland and North Carolina.  (Pet. ¶ 7.)  Plaintiff maintains a checking account with Defendant.  (Pet. ¶ 6.)  Plaintiff's account with Defendant is governed by a uniform contract entitled "Terms and Conditions of Your Account."  (Account Agreement (ECF No. 1-1).)  Plaintiff's account is also governed by a fee schedule, which outlines fees that Defendant may charge when certain enumerated events occur.  (Fee Schedule (ECF No. 1-2).)  One of those events occurs when an accountholder lacks sufficient funds in her account to cover a transaction.  In that situation, Defendant has two options:  (1) it can cover the transaction and charge the accountholder a $38.00 "overdraft" fee, or, (2) it can return the payment request to the merchant and charge the accountholder a $38.00 "non-sufficient funds" ("NSF") fee.  (Account Agreement at 7; Fee Schedule at 1.)

The parties dispute whether the contract[2] allows Defendant to charge multiple fees on a single overdrawn transaction.  The Fee Schedule states that a fee may be charged "per item":

**OVERDRAFT FEES:**
Applies to overdrafts created by check, in-person withdrawal, ATM withdrawal, or other electronic means.
Non-Sufficient Funds[2] *(Per Item)* .............................................$38.00
Overdraft[2] *(Per Item)*............................................................$38.00
Transfers to Cover Overdrafts ...............................................$12.50
**(Non-sufficient funds and overdraft fees are not charged for items $1.00 or less or for items that cause an account balance to be overdrawn by $1.00 or less)**

---

[2]      The Account Agreement and the Fee Schedule are collectively the "contract."

(Fee Schedule at 1.)  The Account Agreement includes the following provision discussing "items":

> The law permits us to pay items (such as checks or drafts) drawn on your account in any order. . . .  To assist you in handling your account with us, we are providing you with the following information about how we process items: In general, ATM and debit card transactions will be posted in order of the date and time on which they occurred, if known, and before any checks written by you; certain other non-check transactions such as overdraft protection fees will be posted in order of dollar amount, from highest to lowest; and checks will be paid in order of check number . . . .

> The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. . . .  If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (resulting in a NSF).

(Account Agreement at 6–7.)

Plaintiff alleges that Defendant charges a fee *each time* a merchant presents an item for payment — regardless of whether Defendant previously returned it and charged a fee.  (Pet. ¶ 13.)  For example, on October 1, 2021, Plaintiff made five payments in varying amounts, but Defendant returned them unpaid due to insufficient funds in Plaintiff's account and charged a total fee of $190.  (Oct. 1 Account Statement (ECF No. 7-1).)  Then, on October 15, 2021, those five payments were presented again without Plaintiff's knowledge, and Defendant again returned them due to insufficient funds and charged another $190.  (Oct. 15 Account Statement (ECF No. 7-2); Pet. ¶ 36.)  Plaintiff contends that the second fee is not only contractually prohibited, but also "deceptive."  (Pet. ¶ 12.)

**B.    Procedural History**

On November 18, 2021, Plaintiff filed a Class Action Petition against Defendant based on the above allegations.  The Petition raises one count of breach of contract but advances two claims in support of the count.  (Pet. ¶ 57–68.)  First, Plaintiff alleges that Defendant breached the express terms of the contract by charging multiple fees for each transaction.  (Pet. ¶ 60.)

Second, Plaintiff maintains that Defendant's conduct breached the implied covenant of good faith and fair dealing.  (Pet. ¶¶ 61–66.)

In response to Plaintiff's Petition, Defendant filed the instant Motion to Dismiss (ECF No. 6) on December 21, 2021.  Plaintiff filed her Response in Opposition on January 21, 2022. (Pl.'s Resp. in Opp'n To Def.'s Mot. to Dismiss ("Opp'n") (ECF No. 13).)  Defendant filed its Reply on February 7, 2022.  (Reply in Supp. of Mot. to Dismiss Pl.'s Compl. ("Reply") (ECF No. 17).)

Defendant asserts that the Court must dismiss Plaintiff's Petition, because "the plain language of the contract" permits its fee practice.  (Def.'s Brief in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 7 (ECF No. 7).)  Defendant further contends that Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed because "her argument goes to the express terms of the contract," not the implied covenant of good faith and fair dealing.  (Reply at 13.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim, or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint must assert more facts than those "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must suffice to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (first citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); and then citing *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

For the purposes of deciding a motion to dismiss, the Court considers the factual allegations set forth in the Complaint. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Additionally, the Court may consider documents attached to the Complaint, Fed. R. Civ. P. 10(c), as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Where, as here, the Complaint expressly relies upon a document integral to the Complaint that the plaintiff did not attach, the Court can also consider that document on a motion

5

to dismiss.[3]  *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" (quoting *Phillips*, 190 F.3d at 618)).  Where the bare allegations of the Complaint conflict with any document incorporated therein, the document prevails.  *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

## III.   ANALYSIS

The Court will first address Defendant's argument that Plaintiff's breach of contract claim must be dismissed, because the contract expressly permits its multiple fee practice.  The Court will then evaluate Plaintiff's claim that Defendant breached the implied covenant of good faith and fair dealing.[4]

---

[3]      The Petition alleges that, in October 2021, Plaintiff was charged $1,216 in NSF fees, according to her account statements.  (Pet. ¶ 36.)  Although the statements do not provide specifics, Plaintiff asserts "upon information and belief" that the majority of her fees came from re-presented items that Defendant had previously returned and charged a fee.  (Pet. ¶ 36.)  Defendant, for its part, has provided Plaintiff's account statements from October 2021 for the Court to consider.  (October 1 Account Statement; October 15 Account Statement; Def.'s Mem. at 4), and Plaintiff does not appear to challenge their authenticity.  Thus, the Court may consider such evidence at this stage.

[4]      When adjudicating state law claims, a federal court must apply the law of the state in which they sit.  *United States v. Little*, 52 F.3d 495, 498 (E.D. Va. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  In so doing, federal courts must use state law according to how the state's highest court has interpreted the law or anticipate how that court would rule.  *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).  Here, Plaintiff brings claims for breach of contract and breach of the covenant of good faith and fair dealing, two state law claims, on behalf of herself and the putative class, so the Court must apply Virginia law.  (Compl. ¶¶ 57-68.)

## A.  Plaintiff Has Stated a Claim for Breach of Contract.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004).  Defendant asserts that Plaintiff's breach of contract claim fails on the first element because the contract "expressly permits the fees she challenges." (Def.'s Mem. at 1.) According to Defendant, because "checks" and "drafts" are "items" under the contract, and because the contract imposes a fee "per item," Defendant may charge a fee each time a merchant submits check or draft and the account has insufficient funds. (Def.'s Mem. at 8–10.)  Stated differently, Defendant contends that an "item" is merely a "*request* for payment" submitted by a merchant. (Def.'s Mem. at 10 (emphasis added).)  Under this reading, each resubmission of a check or draft by a merchant constitutes a distinct "item" that Defendant can decide to pay (resulting in an overdraft) or return (resulting in an NSF).

In response, Plaintiff cautions that such a reading would permit Defendant to impose enormous fees on accountholders without their knowledge, as a merchant could have multiple requests returned before an accountholder becomes aware of what happened.  In her view, an "item" does not constitute a request for payment, but rather "an *accountholder's instruction* for payment." (Opp'n at 9 (emphasis added).)  Under this interpretation, Defendant cannot charge multiple fees on a single returned check or draft, because a merchant's resubmission does not constitute a new "item."

Thus, at its core, the parties' dispute turns on what "item" means.  If the Court finds its meaning ambiguous — that is, both Plaintiff and Defendant's interpretations are reasonable — then the Court cannot dismiss Plaintiff's breach of contract claim.  *See Martin Marietta Corp. v.*

7

*Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."); *Info. Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 419 (E.D. Va. 2011) (denying a motion to dismiss because the defendant's argument required "the interpretation of ambiguous terms" in a contract).

"Contractual provisions are ambiguous if they may be understood in more than one way or if they may be construed to refer to two or more things at the same time." *Nextel Wip Lease Corp. v. Saunders*, 666 S.E.2d 317, 321 (Va. 2008). However, "[a] contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Pocahontas Mining LLC v. Jewell Ridge Coal Corp.*, 556 S.E.2d 769, 771 (Va. 2002). Conflicting interpretations reveal an ambiguity only if the interpretations are "reasonable." *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019). An interpretation is reasonable when it serves as one of two "equally possible" interpretations "given the text and context of the disputed provision." *Id.* at 356 (citation and internal quotation marks omitted). When determining the reasonableness of an interpretation, the court must "construe the contract as a whole." *Landsdowne Dev. Co. v. Xerox Realty Corp.*, 514 S.E.2d 157, 161 (Va. 1999). The court should not emphasize isolated terms at the expense of the "larger contractual context." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237, 244 (Va. 2016). In the event that the contract bears an ambiguity, the court must construe it "against the drafter of the agreement." *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849, 851 (Va. 1998).

After careful consideration, the Court finds that the contract is ambiguous as to whether an item functions as a request for payment (as Defendant argues) or an accountholder's instruction to pay (as Plaintiff argues). The contract does not make clear whether the

8

resubmission of a previously returned item constitutes a new item, which would enable Defendant to charge another fee. (*See* Fee Schedule at 1 (imposing a fee "per item").)  That an item could be a check or draft, as Defendant argues, does not resolve whether the *same* check or draft presented again is a *separate* item. *See Fludd v. S. State Bank*, 2021 WL 4691587, at *11– 12 (D.S.C. Oct. 7, 2021) (concluding that an account agreement was ambiguous, because its examples of "item" did not resolve whether a re-presentment of a previously returned item constituted a new item).  Indeed, the contract here reveals little about what makes an item distinct.  It does not state that each request for payment by a merchant creates a new item, or that each instruction by the accountholder creates a new item; it merely permits the assessment of a fee "*[i]f an item is presented without sufficient funds in your account to pay it.*"  (Account Agreement at 7 (emphasis added).)  Defendant suggests that difficulty distinguishing between new submissions and resubmissions can arise, resulting in multiple items. (Def.'s Mem. at 2.) However, the contract indicates that each item has a date, amount, payee and unique identifying number (Account Agreement at 4), demonstrating that Defendant can discriminate between new submissions and resubmissions.  At bottom, the Court finds Plaintiff's and Defendant's arguments equally persuasive and plausible.  Thus, an ambiguity exists, and the Court must read it against Defendant, as the drafter of the agreement.[5]  *Martin & Martin, Inc.*, 504 S.E.2d at 851.

---

[5]      Plaintiff relies on several pieces of extrinsic evidence to support her breach of contract claim.  The Petition cites to account agreements from three other financial institutions to establish that account agreements ordinarily specify that multiple NSF fees may be imposed on a single transaction. (Pet. ¶¶ 31–33.)  And Plaintiff's Opposition cites both the Uniform Commercial Code and the National Automated Clearing House Association rules to bolster her interpretation of "item." (Opp'n at 9–10.)  While courts may consider extrinsic evidence if a contract provision bears ambiguity, the resolution of that ambiguity yields a question of fact, *Online Res. Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. 2013), and courts may not resolve such questions at the motion to dismiss stage, *Martin Marietta Corp.*, 991 F.2d at 97.  Accordingly, because the contract here is ambiguous, the Court will not consider Plaintiff's extrinsic evidence at this stage to resolve that ambiguity.

Defendant argues that Plaintiff's reading is not reasonable, because it relies on cases where "the contract at issue equated 'items' with 'transactions' for purposes of assessing overdraft or NSF fees." (Reply at 9.) In particular, Defendant targets Plaintiff's reliance on *Fludd*, where the district court found a similar account agreement ambiguous. 2021 WL 4691587, at *11–12. According to Defendant, "[a]lternating the use of the terms 'item' and 'transaction' in the contract at issue in *Fludd* resulted in ambiguity that simply does not exist under [Defendant]'s contract." (Reply at 9.) The Court disagrees. Both the contract in *Fludd* and the contract here use item and transaction interchangeably, creating an ambiguity. In *Fludd*, the contract stated, "if we do not authorize and pay an item then we will decline or return the transaction unpaid." 2021 WL 4691587, at *11 (emphasis omitted). Here, the contract conflates "items" with "ATM and debit *transactions*" and "non-check *transactions*" right before it states that overdraft and NSF fees may be imposed on an "item." (Account Agreement at 6.) While such fact is not dispositive, it lends further credence to the Court's finding that Plaintiff's interpretation is reasonable.

Defendant relies heavily on *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019), to argue that the contract here unambiguously supports its reading (Def.'s Mem. at 12–15; Reply at 4–5, 10–11), but *Lambert* provides limited guidance. Although the court in *Lambert* concluded that similar contract language unambiguously permitted the multiple-fee practice at issue here, the parties there *agreed* that item meant a request for payment, so it logically followed that each request for payment by a merchant created a distinct item under the contract. 2019 WL 3843064, at *3. Here, by contrast, the parties vigorously dispute whether item means a request for payment by a merchant or an instruction to pay by the

accountholder. And as noted above, the contract language does not unambiguously resolve the dispute.

Because of the lack of clarity regarding resubmission of a previously returned item constitutes the same or a separate item under the contract, and because the Court finds Plaintiff's and Defendant's interpretations equally plausible, the allegations supporting Plaintiff's breach of contract claim can withstand Defendant's Motion to Dismiss. Therefore, the Court will deny the Motion as to Plaintiff's breach of contract claim.

### B.     Plaintiff Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Court turns next to Plaintiff's contention that Defendant breached the implied covenant of good faith and fair dealing. "Under Virginia law, every contract contains an implied covenant of good faith and fair dealing." *Rogers v. Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. Jan. 22, 2014). A breach of the implied covenant, however, "only gives rise to a breach of contract claim, not a separate cause of action."[6] *Frank Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008). A claim for breach of the implied covenant of good faith and fair dealing requires "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). Here, it is undisputed that a contractual relationship existed between the parties, so the only question is whether Plaintiff has properly alleged a breach of the implied covenant.

---

[6]     Because a claim for breach of the implied covenant of good faith and fair dealing does not furnish an independent cause of action, a party cannot raise it as a separate count in a complaint. *Rogers*, 992 F. Supp. 2d at 633. But a party can raise the claim as part of a count for breach of contract. *Goodrich Corp. v. BaySys Techs., LLC*, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012). Here, Plaintiff alleges breach of the implied covenant of good faith and fair dealing as part of her breach of contract count. (Pet. ¶¶ 57–68.) Thus, Plaintiff has raised the claim in the appropriate context.

The implied covenant of good faith and fair dealing exists to protect a party's right "to receive the benefits of the agreement." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 611 (4th Cir. 2021) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2021)) (internal quotation marks omitted). To this end, the implied covenant prohibits a party from exercising "contractual discretion in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.–Conn.*, 156 F.3d 535, 542 (4th Cir. 1998). The implied covenant does not, however, "prevent a party from exercising its explicit contractual *rights*." *Id.* Accordingly, if a party possesses a *discretionary* power under the contract, "that party cannot act arbitrarily or unfairly" in exercising that discretion. *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013). But if a party has a contract *right*, then "that party is only forbidden from acting dishonestly." *Id.*

Plaintiff contends that Defendant "uses its contractual discretion" to define "item" in a way "that violates common sense and reasonable consumer expectations" to charge more fees. (Pet. ¶ 44.) Plaintiff further describes such practice as deceptive, given the contract's express terms. (Pet. ¶ 12.) Defendant, for its part, asserts that Plaintiff's implied covenant claim must be dismissed because her argument goes to the "express language in the contract, not any implied discretion."[7] (Reply at 13 (emphasis omitted).) Given the language in the contract and the nature of Plaintiff's claim, the Court agrees with Defendant that Plaintiff's claim pertains to Defendant's express contractual rights and will dismiss her implied covenant claim.

The contract does not just vest mere discretion in Defendant to define what qualifies as an item before charging a fee. Indeed, "every exercise of a contractual right involves some

---

[7]     Defendant also alleges that the Court must dismiss Plaintiff's claim, because the contract expressly permitted its multiple-fee practice. (Def.'s Mem. at 16–18.) But as this Court has already concluded, the contract is ambiguous on that issue.

exercise of discretion." *Stoney Glen*, 944 F. Supp. 2d at 467.  However, the legal distinction between the two terms hinges on whether a contract requires that a party make a finding before exercising its contractual right. *See, e.g.*, *id.* at 469 (finding that plaintiff stated a plausible claim for breach of the implied covenant, because the contract gave defendant the right to terminate the agreement if it found that plaintiff made a misrepresentation); *Va. Vermiculite*, 156 F.3d at 541–42 (holding that the district court erred in dismissing plaintiff's implied covenant claim, because the contract granted "sole discretion" to defendant to determine whether to mine the land at issue and thus remit profits to plaintiffs).

Here, the contract states: "If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (resulting in a NSF)." (Account Agreement at 7.)  Nothing in the contract tasks Defendant with the power to determine what qualifies as an item.  It does not say, for instance, "If, *as determined by Defendant*, an item is presented."  Nor does it say, "Defendant reserves the right to determine if a submission is an item."  In fact, the contract attempts to define "item," suggesting that a submission either does or does not constitute an item — and if a submission does not qualify as an item, Defendant violates the *express* terms of the contract if it charges a fee, not a discretionary power.  (Account Agreement at 6 (using "checks," "drafts," "ATM and debit card transactions," and "non-check transactions" as examples of "items.").)

Importantly, the contract gives Defendant discretion in other areas related to processing items, but by contrast, it does not furnish Defendant discretion over what constitutes an item. The contract confers discretion on Defendant to choose what to do with an item *once it is presented*:  pay the item (resulting in an overdraft fee) or return the item (resulting in an NSF fee).  But Plaintiff does not allege that Defendant exercised this discretion in bad faith, as would

13

conceivably be the case if Defendant exclusively returned items to maximize fees. (*See* Pet. ¶ 12 (alleging that Defendant will charge "an NSF fee followed by an overdraft fee" on an item).) The contract also gives Defendant "*unilateral and absolute discretion*" to decide the order in which it processes items. (Account Agreement at 6 (emphasis added).) But Plaintiff does not allege that Defendant employs an ordering method that unfairly triggers more overdrafts. *See, e.g., Fludd*, 2021 WL 4691587, at *1 (alleging that the defendant employed an "available balance bookkeeping method" that "routinely [led] to an overdraft fee even though sufficient money remain[ed] in the account after a transaction [was] paid"). That the contract explicitly gives Defendant discretion in such areas but does not state that Defendant has discretion to decide what constitutes an item further confirms that the contract does not vest Defendant with such discretion.

Because Plaintiff's claim does not turn on whether Defendant abused its discretion, but instead turns on whether Defendant has a contractual *right* to charge multiple fees (i.e., whether "item" means a request for payment or an instruction to pay), Plaintiff can properly state a claim for breach of the implied duty of good faith and fair dealing only through alleging that Defendant acted dishonestly. *See Stoney Glen*, 944 F. Supp. 2d at 466 ("The duty can also be breached if the purported exercise of a contractual right is dishonest, as opposed to merely arbitrary." (citation omitted)). The Petition, however, is devoid of factual allegations suggesting that Defendant acted dishonestly. First, the brunt of the Petition's allegations on this point are conclusory. (*See* Pet. ¶¶ 2, 5, 44, 46 (accusing Defendant of "misleadingly and deceptively misrepresent[ing]" its fee practices, orchestrating an "improper scheme," violating "common sense and reasonable consumer expectations," and acting in "bad faith")); *see also Iqbal*, 556 U.S. at 681 (noting that "conclusory" allegations are "not entitled to be assumed true"). Second,

14

the fact that the contract is not as specific as other account agreements is not dishonest. *See* (Pet. ¶¶ 31–33 (describing the contractual provisions that other banks include in their account agreements)); *Stoney Glen*, 944 F. Supp. 2d at 466 (holding that contravening standard business practices is not dishonest). And finally, the mere fact the Court finds the term "item" ambiguous does not provide the Court with sufficient reason to infer that Defendant intended to deceive accountholders to charge more fees — particularly when the contract attempts to define the term. Accordingly, the Court will grant Defendant's Motion to Dismiss with respect to Plaintiff's breach of the implied covenant of good faith and fair dealing claim.[8]

## IV.    CONCLUSION

Plaintiff has pled sufficient facts to support her claim for breach of contract, but she has not pled sufficient facts to support her claim for breach of the implied covenant of good faith and fair dealing. Therefore, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss. The Motion is GRANTED with respect to Plaintiff's implied covenant of good faith and fair dealing claim and DENIED with respect to Plaintiff's breach of contract claim. Additionally, the Court hereby DENIES Defendant's request for oral argument

---

[8]     On March 9, 2022, Plaintiff filed a Notice of Supplemental Authority, in which she brings *Watson v. Suffolk Federal Credit Union*, 2022 WL 523543 (E.D.N.Y. Feb. 22, 2022) to the Court's attention. (Pl.'s Notice of Supplemental Authority ("Pl.'s Notice") (ECF No. 22).) In *Watson*, the plaintiff sued Suffolk Federal Credit Union for, among other claims, breach of contract and breach of the covenant of good faith and fair dealing, alleging the same sort of multiple-fee claims at issue in the instant case. *Watson*, 2022 WL 523543, at *1–2. As Defendant points out in its Response to the Notice, the Eastern District of New York's rulings do not bind this Court, and the *Watson* court interpreted the claims in that case under New York law — two factors that render *Watson* largely irrelevant to the instant case. (Resp. to Pl.'s Notice of Supplemental Authority at 1 (ECF No. 23).) At any rate, the outcome in *Watson* does not change the Court's analysis, because, as here, the *Watson* court deemed the term "item" ambiguous and allowed the breach of contract claim to survive the motion to dismiss. *Watson*, 2022 WL 523543, at *4. The court also dismissed her implied covenant claim, as in this case, but did so because New York law does not permit implied covenant claims that simply duplicate breach of contract claims. *Watson*, 2022 WL 523543, at *4–5.

on the Motion (ECF No. 18).

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

An appropriate Order will issue.

It is so ORDERED.

                                     ____/s/_____
                                     David J. Novak
                                     United States District Judge

Richmond, Virginia
Date:  April 7, 2022